**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LILLIAN HUFFMAN o/b/o B. H. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-CV-672-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1]/ | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**[2]/

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lillian Huffman (Plaintiff) appeals the decision of the Commissioner denying Social Security benefits to her minor child ("B.H."). Plaintiff asserts that the Administrative Law Judge ("ALJ") (1) erred in finding B.H's mental impairments did not functionally equal a Listing; (2) failed to properly assess whether B.H.'s mental impairments met a Listing; and (3) erred in failing to properly evaluate Plaintiff's credibility. For the reasons discussed below, the Court affirms the decision of the Commissioner.

### **1. FACTUAL AND PROCEDURAL HISTORY**

B.H. was born August 27, 1996. (R. 46.) Plaintiff alleges that B.H. is disabled due to Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD") and possible Asperger's Syndrome. Plaintiff asserts that B.H.'s father abused him verbally and physically, and that two other adults who lived with his family may have sexually

---

[1]/ Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2]/ This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

abused B.H. as well. Plaintiff admitted that B.H. had witnessed drug abuse by his parents, but she claims that she stopped abusing drugs after April 2001. (R. 156.) According to Plaintiff, when B.H. was only two years old, B.H. set his father's house on fire. Soon thereafter the father ceased to be part of B.H.'s life. Plaintiff has two other daughters who live with her and are slightly older than B.H. Plaintiff gives a family history of mental problems manifested in her mother, father, sister, and brother. (R. 156.)

The record shows that Plaintiff has had his own emotional and behavioral problems. At school, he has been frequently aggressive and disruptive. Teachers have removed him from the classroom numerous times, (*e.g.* R. 97, 236), and administrators have suspended him on occasion. (*E.g.*, R. 253-54.) In kindergarten and first grade, he preferred to play alone and had no close friends. (*See* R. 91, 94.) His kindergarten teacher reported that he was functioning below average; his poor behavior affected his learning; he lacked social skills; he quit whenever he felt frustrated or did not want to do the work; he had trouble staying on task; and he defied discipline. (R. 94-96, 103.)

B.H.'s first grade teacher reported that his behavior was much improved when he was on medication. (R. 91-92.) In second grade, B.H. told a mental health examiner that he had one friend (R. 157), and his mother later testified that he had kept one friend. (R. 256.) He has taken medication for his conditions, but his mother testified that the medications eventually "wore off." (R. 253.) In third grade, school personnel reported that B.H. did not behave properly at school and consequently, his learning was affected (R. 170.) School personnel proposed a multidisciplinary evaluation because "[e]ven though we have tried re-direction, time-out, positive re-enforcement & he is on medication, [B.H.'s] behavior continues to interfere with academic progress & social interaction." (R. 172.)

2

School officials completed an Individualized Education Program ("IEP") for B.H. when he was in fourth grade, stating that he had been "classified emotionally disturbed." (R. 238.) His test scores showed that he was at a fourth grade level for reading comprehension and a third grade level for word recognition and oral reading, but he was at a first grade level for spelling and math skills. (*Id.*) When B.H. was in fifth grade, his principal wrote that B.H. was in "some special education classes and has, at times, had extreme problems dealing with peers and authority figures." (R. 235.)

Plaintiff has sought counseling for B.H. at Edwin Fair Community Mental Health Center, and three mental health professionals have examined B.H. at the Commissioner's request. On October 30, 2002, Laurie Clemens, Ph.D., diagnosed B.H. with ADHD by history, and she suspected Asperger's Disorder and Mild Mental Retardation. (R. 109.) She stated: "Further information, related to his intellectual abilities and autistic symptoms would be useful in forming a more definitive diagnosis." (R. 110.) Two months later, A. Owen Fonkalsrud, M.A., provided such information when he evaluated B.H. Fonkalsrud administered various tests and, although he suspected that B.H. might have a learning disorder, he found that B.H. had a Full-Scale Intelligence Quotient ("IQ") of 115, representing above average intelligence. (R. 113-15.)

The ALJ denied a request by Plaintiff's representative for further neuro-psychological testing related to the suspected Asperger's syndrome and learning disorder. Instead, the ALJ sent B.H. for a third mental status examination. (*See* R. 19, 233-34.) Dennis A. Rawlings, Ph.D., examined B.H. on February 11, 2004, and diagnosed B.H. as having anxiety disorder and posttraumatic stress disorder in addition to ADHD, ODD, suspected Asperger's Syndrome. (R. 159.) He assessed B.H's current Global Assessment of

3

Functioning (GAF)[3/] score as 65, "Improved on medication," with a past year GAF of 50-55. (R. 160.)

Plaintiff filed for supplemental security income benefits by application dated July 1, 2002. (R. 46-47.)  She alleged that B.H. became disabled on January 1, 2002. (*Id.*)  Her application was denied initially and upon reconsideration, and she requested a hearing before an ALJ.  That request was granted, and a hearing was held on November 24, 2003. (*See* R. 174-93.)  ALJ Richard Kallsnick issued a decision denying benefits on May 15, 2004. (R. 12-21.)  The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed the decision to this Court.  On February 9, 2006, this Court reversed and remanded for reconsideration due to the AlJ's failure to adequately discuss the credibility of Plaintiff's testimony.  *Huffman v. Barnhart*, No. 05-CV-42-FHM (N.D. Okla. 2006) (*see* R. 222-28.)  ALJ Kallsnick held a hearing on September 12, 2006 (*see* R. 245-65), and rendered a decision on October 12, 2006, again concluding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 297-208.)  Plaintiff did not file exceptions and the Appeals Council did not otherwise assume jurisdiction; thus, the ALJ's decision is the final decision of the Commissioner after remand.  20 C.F.R. § 404.984(d).

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

---

[3/]   The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." *Id.* at 34.  A GAF score of 65 falls within the middle of the range indicating "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750.

"The finding of the Secretary[4] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.  This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be

---

[4] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

Children's disability cases require the ALJ to follow a three-step process in determining whether the child meets the criteria for a qualification of disability: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is or are severe; and (3) whether the child's impairment(s) meets, medically equals, or functionally equals the listings in 20 C.F.R., Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(a) (2004); *e.g., Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).  Functional equivalence is determined by analyzing six domains:  "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and ... (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

If the child is extremely limited in one domain, or markedly limited in two domains, the impairment is functionally equivalent to the relevant listing, *id.* § 416.926a(a), and the child is disabled, *id.* § 416.924(a).  As used in the functional equivalency determination, a limitation is marked if the "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(I).  A limitation is extreme if the "impairment(s) interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(I).  Day-to-day functioning may be seriously or very seriously limited when an impairment either "limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities." *Id.* §§ 416.926a(e)(2)(i), 416.926a(e)(3)(i).

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that (1) B.H. had not engaged in substantial gainful activity; (2) that B.H.'s ADHD and ODD were severe impairments; and (3) that B.H. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments. (R. 200-201.)  More specifically in terms of the functioning domains, he found that B.H. had less than marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; marked limitation interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself, and no limitation in health and physical well-being. (R. 202 - 207.)  Accordingly, the ALJ concluded that B.H. had not been disabled, as defined the Social Security Act, since May 28, 2002, the date the application was filed. (R. 207.)

### 4.  REVIEW

**A.**     **Meeting a Listing**

Although Plaintiff's first argument is that the ALJ erred in finding B.H.'s mental impairments did not functionally equal a Listing, the Court will first address his second argument, *i.e.,* that the ALJ failed to properly assess whether B.H.'s mental impairments met a Listing at all, because the ALJ addressed it first and the issue of functional equality logically follows.  In finding that B.H.'s ADHD and ODD did not meet a listing, the ALJ explained:

> The claimant's medical records do not support a finding that either his ADHD or ODD includes any two of the marked impairments required at paragraph B2 of 112.02.   These are marked impairments in age-appropriate

> cognitive/communicative functioning, social functioning, and personal functioning.

(R. 200.) The listing at 112.02 is for "Organic Mental Disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The regulation explains that "[t]he required level of severity for these disorders is met when the requirements in both [paragraph] A and B are satisfied." *Id.* Paragraph A requires "[m]edically documented persistence" of at least one of ten listed symptoms. Paragraph B sets forth four criteria for children age 3 to 18, which include "[m]arked difficulties in maintaining concentration, persistence, or pace" in addition to the three described by the ALJ. As the Commissioner noted, the listing for ADHD is 112.11, and the listing for ODD is 112.08; however, both of these listings require certain symptoms that result in at least two of the appropriate age-group criteria found in paragraph B2 of Listing 112.02.

The ALJ did not immediately proceed to discuss the medical records upon which he relied for his finding; instead, he proceeded to find that B.H.'s ADHD and ODD did not functionally equal the listings. After that finding, he embarked upon a lengthy discussion of the evidence upon which he relied and the evidence he rejected. While this discussion provides support for the ALJ's summary of his finding that B.H.'s impairments did not meet or medically equal a listing, its placement in the opinion makes it more difficult for the Court to evaluate whether the ALJ properly considered the relevant regulation, especially since he failed to note that there are four, and not three, considerations in paragraph B.2. The ALJ's later determination that B.H. had a less than marked functional limitation in attending and completing tasks leads the Court to believe that the ALJ would not have found that B.H. had a marked difficulty in maintaining concentration, persistence, or pace. If the ALJ's

decision in that regard is supported by substantial evidence, the Court would be reluctant to fault the ALJ for not being as precise as he should have been.

## B.   Functional Equality

Plaintiff challenges the ALJ's findings as to two of the six domains of functioning: acquiring and using information; attending and completing tasks; and interacting and relating to others.

### 1.   Acquiring and Using Information

The ALJ summarized in finding in this domain by stating: "[B.H.] has been shown on the Wechsler III for Children to have above average intelligence.  In his most recent evaluation, Dr. Rawlings wrote that the displayed an adequate attention span and working memory.  His failure to complete homework and other assignments has been due to his Oppositional-Defiant Disorder rather than a lack of intellectual capacity." (R. 203.) Plaintiff points out that, when B.H. was in fourth grade, educators evaluated him, for purposes of his Individualized Education Program ("IEP"), at a first-grade level in mathematics and spelling.  (R. 238.)  However, the ability to solve mathematics questions and computing mathematics answers is only one of several examples of limited functioning in acquiring and using information, *see* 20 C.F.R. § 416.926a(g)(3)(iv), and the ALJ did not find that B.H. lacked any limitations in this area – he merely found that B.H. had less than marked limitations.  Further, the same IEP form shows that Brian had tested at the 4th grade level for reading comprehension and at the 3rd grade level for word recognition and oral reading. (R. 238.)

As the Commissioner points out, the ALJ relied, in part, on the Wechsler Intelligence Scale for Children test scores for B.H. (R. 201, 203.)  The Social Security regulations indicate that "marked" limitations are the "the equivalent of functioning that [one] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i).  B.H. scored above the mean score of 100 for the full-scale IQ test and all of this subtest scores were at or above the mean score of 10. (R. 113.)

Contrary to Plaintiff's allegations, the ALJ did consider B.H.'s test scores together with other information, "including reports of classroom performance and the observations of school personnel and others."  20 C.F.R. § 416.926a(e)(4)(ii).  In particular, the ALJ noted Dr. Rawlings' observation that B.H. displayed an adequate attention span and working memory.  The ALJ also acknowledged that B.H. failed to complete homework and other assignments, but he attributed that failure to B.H.'s ODD rather than a lack of intellectual capacity. (R. 203.)  The ALJ did not, as Plaintiff asserts, base his conclusions solely on how B.H. functioned in a "one-to-one, new or unusual situation," see 20 C.F.R. 416.924a(b)(6), but also considered his school performance and the effect of his impairments on that performance.  The ALJ did not err in finding that B.H. had a less than marked limitation in acquiring and using information.

### **2.     Attending and Completing Tasks**

The ALJ stated, with regard to this domain, that "[B.H.] has a history of refusing to complete tasks and assignment.  But, as with acquiring and using information, medical compliance improves his performances in this realm." (R. 204.)  Plaintiff repeatedly states that medication had not proven to be effective in remedying B.H.'s symptoms on a

sustained basis. He cites to Plaintiff's testimony at the first and second hearing in that regard. (*See* R. 182, 188, 253, 259.) The ALJ acknowledged that testimony, in part, but also pointed out that Plaintiff reported to Owen Fonkalsrud that B.H's behavior was more positive when he was on his medication. (R. 201; *see* R. 114.) The ALJ also assigned noted Dr. Rawlings' report, which indicates that B.H. "used to get kicked out of school before he was placed on medication; that B.H. "can perform adequately in school if he is on his medication," and "[m]edication has greatly reduced the outbursts at home and school." (R. 156, 159; *see* R. 202.) Again, the ALJ acknowledged that B.H. had some limitation in this domain, but he assessed that limitation as less than marked. The Court finds no error in the ALJ's assessment.

### 3.     Interacting and Relating to Others

In finding that B.H. had a marked limitation in this domain, the ALJ remarked that "[B.H.] has no close friends and is described by his mother as anxious and uneasy being around people. A school report dated September 13, 2004 described him acting disruptively in class and disturbing others." (R. 205; *see* R. 170.) For those reasons, the ALJ found that B.H. did have a marked limitation in interacting and relating to others. Plaintiff faults the ALJ for not finding that B.H. had an extreme limitation in this domain. The regulations explain that an extreme limitation is the rating reserved for the "worst limitations," but "it does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i).

Plaintiff points to one notation in the record showing that, in April 2002, B.H. had "poor social skills." (R. 90.) Plaintiff points to other notations from Edwin Fair Community Mental Health Center indicating that B.H. "did not have friends, did not play outside with

other children after school, tended to withdraw from others and isolate at school[,] . . . showed a lack of consideration for others, was physically aggressive toward peers, had no friends, and demonstrated 'poor interpersonal skills.'" (*See* Opening Br., Dkt. # 19, at 4, citing R. 121, 125, 141.)  Yet, these same records include notations indicating that "[c]lient has good prognosis due to th fact that he has made so much progress so far" and "[c]lient's teacher said that she could not 'believe that client was the same child from last year." (R. 120.)  Other notations include:  "[c]lient has built a more positive relationship with his sister" and "client has managed to maintain some friendships since school has started." (R. 121.)  In B.H.'s April 2003 discharge summary from Edwin Fair, his therapist wrote that "client has achieved goals to decrease anger & physical violence & learned skills to decide limits & boundaries with consequences & rewards." (R. 140.)  The therapist also wrote that B.H. needed no further mental health care, services or treatment.  (R. 141.)

Apparently, B.H. began having problems again and presented to Edwin Fair in August 2003 for additional help.  (R. 146-54.)  Reports indicate that B.H. appeared angry, had temper tantrums, refused to speak to anyone when he did not get his way, blamed others for his mistakes, refused to comply with rules, lied to his mother about completing his homework, was easily annoyed by others, and was argumentative.  (R. 146, 148, 150, 151.)  Still another indicated: "not many friends, does not play with children outside of school." (R. 153.)  While B.H. obviously had problems interacting and relating to others, the line between "serious" and "very serious" is a fine one, and the evidence cited by Plaintiff as indicative of very serious, or extreme limitations, does not compel that finding.

For example, plaintiff also points out that B.H.'s school principal described him as having "some extreme problems dealing with peers and authority figures," lacking social

skills, and having "trouble with peer pressure." (R. 235.) The principal actually wrote "To Whom It may Concern" that

> [B.H.] is a normal, healthy, 5th grade student . . . [who] has had some difficulties this past year or so and could possibly benefit greatly from some of the services you offer. He is in some special education classes and has, *at times*, had some extreme problems dealing with peers and authority figures. His social skills are lacking and he has trouble dealing with peer pressure. He will compromise his values of right and wrong to fit in socially. He has been in several altercations with peers, been caught stealing on more than one occasion, and thinks nothing of trying to lie his way out of difficult situations. We, at the school have recommended counseling and different kinds of interventions to change this behavior, *all met with some success.* He has good support at home, but limited resources.

(R. 235) (emphasis added). Obviously, B.H. is a troubled child. The question for the ALJ was whether B.H. is a disabled child. The ALJ's decision as to B.H.'s functional limitations is supported by substantial evidence, which the Court will not reweigh. *E.g., Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

**C.     Credibility**

As set forth above, the Court previously remanded this case due to the ALJ's failure to adequately discuss the credibility of Plaintiff's testimony. (R. 227.) In his 2004 decision, the ALJ made no finding of credibility and merely described Plaintiff's testimony, without making any assessment of it. He remedied that error in the 2006 decision, but Plaintiff again challenges that aspect of the ALJ's decision.

The ALJ summarized Plaintiff's testimony that B.H. had been suspended; measures taken at school had not improved his behavior; he was bored in class; he went into tantrums at home; he could be manipulated by others in his class; his hyperactivity made sitting still very difficult for him; he had a habit of not completing homework assignments; and his current medication did not seem to be helping. (R. 201.) Nonetheless, the ALJ

found that Plaintiff's statements concerning the intensity, persistence and limiting effects of B.H.'s symptoms were "not entirely credible." (*Id.*)  The ALJ then noted that Plaintiff had stated in a December 10, 2002 evaluation that B.H. "hates school and doesn't adjust."  The ALJ pointed out that B.H. had above average intelligence and that examiner Fonkalsrud described B.H.'s behavior as "basically very adequate." (R. 201; *see* R. 113.)  While these two observations do not specifically address B.H.'s attitude toward school, the ALJ also noted Plaintiff's comment to Fonkalsrud that B.H.'s behavior "was more positive when he was on his medication. (R. 201; *see* R. 114.)  Further, the ALJ pointed out the Plaintiff had made the same comment to Laurie Clement in October 2002, at which time Plaintiff stated that B.H. was doing well in school since he began taking medication for his ADHD. (R. 201; *see* R. 108.)

The ALJ then contrasted the results of Clement's evaluation with those of Fonkalsrud's evaluation, noting that Clement's overall assessment was negative by comparison.  Nonetheless, as the ALJ noted, B.H. told clinicians at Edwin Fair in October 2002 that he liked school and considered himself to be smart. (R. 202; *see* R. 118.)  The ALJ pointed out that Edwin Fair clinicians reported progress in B.H.'s behavior but supported Plaintiff's view that B.H. became intransigent if things did not go his way. (R. 202; *see* R. 120.)  He also noted the positive remark from B.H.'s teacher as to B.H.'s progress. (*Id.*)

The ALJ then acknowledged the regression in B.H.'s behavior, as reported by Edwin Fairs clinicians in 2003, but contrasted those reports to the report of Dennis A. Rawlings in February 2004.  B.H. reported to Dr. Rawlings that he was making A's and B's and that he liked school and was no longer getting "kicked out of school" since he began taking

14

medication. (R. 202; *see* 156.)  Plaintiff told Rawlings that B.H. had been diagnosed with depression; that he was anxious and uneasy being around people; and that he had chest pain, headaches, and nightmares. (*Id.*)   Nonetheless, the ALJ focused on Rawlings' findings indicating that B.H. had an adequate attention span and working memory, and could that he could perform adequately if he remained on his medication. (R. 202; *see* R. 158.)  Further, Rawlings' found that B.H.'s outbursts at home and school had been greatly reduced by medication.  (R. 202; *see* R. 159.)

Thus, the ALJ adequately assessed the credibility of Plaintiff's testimony.  In reviewing credibility determinations, the finder of fact is to be given great deference.  *E.g., White v. Barnhardt*, 287 F.3d 903, 909 (10th Cir. 2001).  When determining credibility the ALJ is to set forth "specific reasons for the finding on credibility, supported by the evidence in the case record."  *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims; Assessing the Credibility of an Individual's Statements*, SSR 96-7P, 1996 WL 374186 (S.S.A.).  Here, the ALJ "closely and affirmatively linked" his credibility finding to substantial evidence in the record.  *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).  The Court finds no error in this regard.

### 5.  CONCLUSION

The Court finds that the ALJ followed the correct legal principles and his decision in this case is supported by substantial evidence.   Accordingly, the Court **affirms** the Commissioner's decision.

It is so ordered this 5th day of November, 2007.

Sam A. Joyner
United States Magistrate Judge